IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, | ) ) ) | |
| Plaintiff, | ) ) | No. 23-cv-03358 |
| v. | ) ) | Judge Andrea R. Wood |
| TRUSTMARK HEALTH BENEFITS, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

**ORDER**

Plaintiff's motion to remand [15] is granted, as this Court lacks subject-matter jurisdiction. The Clerk is directed to remand this case to the Circuit Court of Cook County. The case will be closed on this Court's docket. Civil case terminated. See the accompanying Statement for details.

**STATEMENT**

This dispute requires the Court to determine whether the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, completely preempts the state-law claims brought by Plaintiff Regents of the University of California ("Regents"). As explained below, the Court finds that it does not. As a result, this Court lacks subject-matter jurisdiction, and the case must be remanded to the Circuit Court of Cook County, where it was originally filed.

**I.   Background**

The following factual summary draws largely from the allegations in Regents's First Amended Complaint ("FAC"), which the Court accepts as true for present purposes. *See Dillon v. Naman, Howell, Smith & Lee, PLLC*, No. 18-CV-00470, 2018 WL 2933602, at *1 n.1 (N.D. Ill. June 12, 2018). The Court also references a specific provision from the governing employee-benefits plan. *E.g.*, *Rush Univ. Med. Ctr. v. Mut. Med. Plans, Inc.*, No. 21 C 03697, 2021 WL 5882139, at *1 (N.D. Ill. Dec. 13, 2021).

Defendant Piedmont Airlines, Inc. ("Piedmont"), an airlines company, offers a benefits plan to its employees. (FAC ¶ 6, Dkt. No. 1-1); *see also* (Pl.'s Mot. to Remand, Ex. 1 at 4–102 ("Plan"), Dkt. No. 15-1.) It retained Trustmark Health Benefits, Inc. ("Trustmark")[1] to serve as claims administrator for the Plan. (FAC ¶¶ 5–6.) In 2019, Regents provided medical care to a patient who was a beneficiary of the Plan ("Patient"). (*Id.* ¶¶ 13–14.) Even though Regents had

---

[1] Trustmark was previously known as CoreSource, Inc. (Notice of Removal ¶ 3, Dkt. No. 1.)

obtained prior approval for the treatment from Piedmont and Trustmark, those entities paid only a small portion of the amount Regents eventually billed. (*Id.* ¶¶ 15–20.)

Regents initially filed the two-count FAC in the Circuit Court of Cook County in April 2023, naming Piedmont and Trustmark (along with unknown Does 1–25) as Defendants and seeking to recover the full amount it contends it is owed for the services it rendered to the Patient.

As to all Defendants, Regents asserts a state-law claim for breach of an implied-in-fact contract. In support of that claim, Regents alleges that it participated in a contract with "Aetna Health Inc.," pursuant to which Regents "agreed to render medically necessary care to individual enrollees of health plans" that "were or would be registered with Aetna as payer signatories." (*Id.* ¶¶ 26, 28.) Pursuant to this arrangement, Regents generally would provide medical care at a discount to its "usual and customary total billed charges." (*Id.* ¶ 28.) According to Regents, Trustmark was a payer signatory—meaning Trustmark, and by extension Piedmont, agreed to pay "for the medically necessary care" Regents provided to the Patient. (*Id.* ¶ 27.) Regents alleges that Trustmark and Piedmont had "satisfactorily paid on a number of claims" in the past. (*Id.* ¶ 35.) With respect to the medical care provided to the Patient, however, they did not pay the full amount owed. (*Id.* ¶¶ 29, 33.)

In the alternative, as to Piedmont and the Doe Defendants, Regents asserts a state-law claim for *quantum meruit* (also known as unjust enrichment). For this claim, Regents alleges that Piedmont "impliedly agreed" to "pay the usual and customary value to [Regents] for the necessary medical treatment" it had rendered to the Patient. (*Id.* ¶ 46.) Regents again describes the "[p]rior course of conduct" with Piedmont as illustrating this arrangement, including Piedmont's practice of "properly pay[ing] the usual and customary value of" the claims Regents submitted. (*Id.* ¶¶ 49–50.) Nonetheless, Piedmont allegedly refused to pay the entire amount owed for the treatment of the Patient. (*Id.* ¶¶ 58–60.) Regents claims that refusal has resulted in an unjust enrichment to Piedmont. (*Id.* ¶¶ 62–64.)

Piedmont removed this case to federal court on May 26, 2023. (Notice of Removal, Dkt. No. 1.) Regents then filed the instant motion to have the case remanded back to state court. (Dkt. No. 15.)[2]

**II. Discussion**

Defendants may remove a case originally filed in state court to federal court so long as "the district courts of the United Sates have original jurisdiction" over the action. 28 U.S.C. § 1441(a). In turn, plaintiffs who "contest[] the asserted jurisdictional basis" may move to remand the case to state court. *Montador, Tr. of Est. of Montador v. Nat'l Hockey League*, No. 21 C 06820, 2022 WL 4291096, at *1 (N.D. Ill. Sept. 17, 2022) (citing 28 U.S.C. § 1447(c)). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th

---

[2] Although Trademark consented to the removal (Notice of Removal ¶ 19), only Regents and Piedmont have submitted briefing regarding the motion to remand.

Cir. 2009). At issue in this case is Piedmont's contention that ERISA completely preempts the state-law claims that Regents asserts, such that those claims raise a federal question within the meaning of 28 U.S.C. § 1331.[3]

Complete preemption "confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 596 (7th Cir. 2008). ERISA is one such federal law. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). Under the two-part test the Supreme Court set out in *Davila*, "[i]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Id.* at 210. Both elements of the test must be satisfied for complete preemption to apply. *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 146 (2d Cir. 2017); *see also Affiliated Dialysis of Joliet, LLC v. Health Care Serv. Corp.*, No. 23 CV 15086, 2024 WL 1195607, at *4 (N.D. Ill. Mar. 20, 2024) (declining to consider whether the plaintiff could have brought its claim under ERISA upon concluding that the claim implicated an independent legal duty).

Here, the parties focus on whether Regents is the type of party that could have sued under ERISA—the threshold inquiry under the first *Davila* prong. *Studer v. Katherine Shaw Bethea Hosp.*, 867 F.3d 721, 724 (7th Cir. 2017). But that prong entails another, separate inquiry regarding whether the claims themselves could have been brought as ERISA claims. *See Franciscan Skemp Healthcare, Inc.*, 538 F.3d at 598 ("[T]he claims are not preempted because they could not have been brought under ERISA § 502(a)(1)(B)."); *see also Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 328 (2d Cir. 2011) (explaining that the first *Davila* prong asks "whether the plaintiff is the *type* of party that can bring a claim pursuant to § 502(a)(1)(B)" and "whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)"). The latter inquiry overlaps to some degree with the second *Davila* prong, which asks whether, assuming the claims could have been brought under ERISA, they also implicate a non-ERISA legal duty. *See Montefiore Med. Ctr.*, 642 F.3d at 328 (distinguishing the two inquiries).

### A. Regents's Ability to Bring an ERISA Claim

The first step in the *Davila* analysis asks whether the plaintiff is the type of party that could have sued under ERISA. *Studer*, 867 F.3d at 724. Pursuant to § 502(a)(1)(B), a "participant or beneficiary" may bring "[a] civil action" concerning the terms of an employee-benefits plan. 29 U.S.C. § 1132(a)(1)(B). In relevant part, a "participant" is "any employee or former employee . . . who is or may become eligible to receive a benefit of any type" under the plan, and a "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit

---

[3] Piedmont's notice of removal briefly mentions ERISA § 514(a), 29 U.S.C. § 1144(a), which preempts state laws that "relate to any employee benefit plan." (Notice of Removal ¶ 11.) But that provision concerns a form of "conflict preemption," a doctrine that "does not confer jurisdiction and must be left to the state court to resolve." *Rush Univ. Med. Ctr.*, 2021 WL 5882139, at *4 (emphasis omitted).

plan, who is or may become entitled to a benefit thereunder." *Id.* §§ 1002(7), (8). As such, the question is whether Regents qualifies as a "participant" or a "beneficiary."

Piedmont characterizes Regents as a beneficiary because it is seeking to recover "benefits" to which the Patient is entitled under the Plan—effectively operating as an assignee. Indeed, when a participant assigns her rights, the assignee may pursue ERISA claims as a beneficiary. *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991). But an assignment must comport with the terms of the plan. *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 615 (7th Cir. 2002). Courts "interpret a plan's terms in an ordinary and popular sense as would a person of average intelligence and experience and resolve ambiguities by referring to the federal common law rules of contract interpretation." *Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 46 F.4th 535, 543 (7th Cir. 2022) (internal quotation marks omitted).

In this case, there is no indication that the Patient's rights under the Plan were assigned to Regents. Moreover, Regents contends that the Plan would prohibit it from asserting the Patient's claims on her behalf. The key provision Regents cites provides as follows:

> You may not assign your legal rights or rights to any payments under this Plan. However, the Plan may choose to remit payments directly to health care providers with respect to covered services, if authorized by you or your dependents, but only as a convenience to you. Health care providers are not, and shall not be construed as, either "participants" or "beneficiaries" under this Plan and have no rights to receive benefits from the Plan or to pursue legal causes of action on behalf of (or in place of) you or your dependents under any circumstances.

(Plan at 90 (emphasis omitted).) This provision on its face bars purported assignments of rights. *Cf. Rush Univ. Med. Ctr.*, 2021 WL 5882139, at *3–4 (holding that the statement, "Benefits are not assignable," barred assignments). Piedmont, however, seizes on the language authorizing direct payment from the Plan to healthcare providers such as Regents. In fact, Regents alleges that it sought such direct payment for its medical services in this dispute. (*See* FAC ¶ 18.) As Piedmont puts it, that means Regents is a beneficiary—notwithstanding the anti-assignment language in the above provision, much less the language that explicitly prohibits treating healthcare providers as "beneficiaries."

It is not clear why Piedmont casts Regents as a beneficiary. Piedmont repeatedly references a purported assignment of the Patient's rights under the Plan to Regents, which is one means of designating a beneficiary. 29 U.S.C. § 1002(8). But a beneficiary may also be designated through "the terms of an employee benefit plan." *Id.* Arguably, the latter method provides a better fit for this scenario, given Piedmont's focus on the direct-payment language itself.

Regardless, both arguments overstate the import of the Plan authorizing direct payment. "[D]irect payment is simply a convenient way to reimburse health care providers . . . ." *Grasso Enter., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016). "While [Regents] may indeed be entitled to a benefit *qua* benefit through operation of the [P]lan," this arrangement is no more than "a function of how" Regents is reimbursed for its "medical services." *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 257–58 (2d Cir. 2015). Regents does not "enjoy[] rights

equal to the participant's to receive coverage from the healthcare plan," as is emblematic of traditional beneficiaries, such as a "spouse or child." *Id.* at 257. Therefore, a "generic commitment to direct payment to providers is not sufficient to . . . make [Regents] an ERISA beneficiary." *OSF Healthcare Sys. v. Matcor Metal Fabrication (Ill.) Inc.*, No. 1:16-CV-1052-SLD-JEH, 2017 WL 1740022, at *4 (C.D. Ill. May 3, 2017); *see also DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 874 (9th Cir. 2017) (explaining that, for similar reasons, "remuneration for medical services rendered is not a 'benefit' under ERISA"). Nor does the direct-payment language strip the Patient of the underlying right to benefits and transfer them to Regents, *Rojas*, 793 F.3d at 257–58, especially given the clear anti-assignment language in the Plan documentation.

Arguing to the contrary, Piedmont primarily relies upon the language in *Kennedy* that "[t]he possibility of direct payment is enough to establish subject-matter jurisdiction." 924 F.2d at 701. The Seventh Circuit, however, noted the "possibility of direct payment" only to bolster its conclusion that an assignee had a "colorable" claim. *Id.* On the other hand, "if the language of the plan is so clear that any claim as an assignee must be frivolous," the court lacks subject-matter jurisdiction. *Id.* at 700. Here, the unambiguous anti-assignment language in the provision at-issue would plainly bar an attempt by Regents to assert a claim as an assignee. *See OSF Healthcare Sys. v. Bd. of Trustees of SEIU Healthcare Ill. Home Care & Child Care Fund*, 456 F. Supp. 3d 1018, 1026–27 (C.D. Ill. 2020) (distinguishing *Kennedy* based on an anti-assignment provision). And outside the assignment context, Piedmont offers no reason to deviate from the principle that mere authorization of direct payment does not make a healthcare provider a beneficiary.

In short, Regents is neither a "participant" nor a "beneficiary" under the Plan. With respect to the latter term, in particular, Piedmont fails to cite a "valid assignment from any patient" or "a designation in a plan" that elevates Regents to the status of a beneficiary. *Penn. Chiropractic Ass'n v. Indep. Hosp. Indem. Plan, Inc.*, 802 F.3d 926, 928 (7th Cir. 2015). As a result, Regents could not have brought this suit under § 502(a)(1)(B). This finding by itself precludes satisfaction of the first *Davila* requirement for complete preemption and thus requires remand.

> **B.** **Legal Source of the Claims**

Whether the challenged claims themselves—here, the two claims for implied breach of contract and *quantum meruit*—could have been brought as ERISA claims constitutes a separate inquiry under the first *Davila* prong. *Studer*, 867 F.3d at 725–26. In particular, § 502(a)(1)(B) allows the plaintiff "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Even if the claims could be construed along these lines, the second *Davila* prong further requires that the claims implicate no legal duty independent of ERISA. *Id.* at 726. Upon assessment of Regents's claims, these aspects of the preemption test also support remand.

With both claims, Regents seeks damages for an underpayment of the rate it alleges it was owed. (*See, e.g.*, FAC ¶¶ 40, 62.) Regents's entitlement to reimbursement for medical services provided to the Patient is undisputed, as evidenced by the partial payment that Piedmont and Trustmark already made. (*Id.* ¶¶ 18–19.) The disagreement instead concerns the amount of

payment Regents should receive. Put differently, this is a "*rate* of payment" case, as opposed to a "*right* to payment" case. *Affiliated Dialysis of Joliet, LLC*, 2024 WL 1195607, at *2.

That distinction is material. "Courts have consistently held that an insurer's alleged failure to adequately pay a medical provider constitutes a separate, independent legal duty that is incompatible with ERISA preemption under *Davila*." *Id.* at *3; *see also, e.g.*, *Emergency Grp. of Ariz. Pro. Corp. v. United Healthcare, Inc.*, 838 F. App'x 299, 300 (9th Cir. 2021) (reasoning that a claim concerning the "rate of reimbursement" implicated duties "independent from the legal obligations imposed by the ERISA plans"). This is because rate-of-payment claims "take each patient's eligibility as a given and do not call upon the court to construe or apply plan provisions." *Stanford Health Care v. Health Care Serv. Corp.*, No. 23-CV-4744, 2023 WL 7182990, at *4 (N.D. Ill. Nov. 1, 2023). Although Piedmont vaguely suggests that a duty to pay the requested rate turns on interpretation of the Plan, it points to no specific provision of the Plan that would factor into the analysis. Rather, it and Trademark's alleged duty would arise from their interactions with Regents outside the confines of the Plan, such as the parties' course of prior dealings. *Cf. Franciscan Skemp Healthcare, Inc.*, 538 F.3d at 597 ("These claims arise not from the plan or its terms, but from the alleged oral representations . . . .").

That Regents's claims do not implicate the Plan suggests that they could not have been brought under ERISA, which is an inquiry under the first *Davila* prong. *Id.* at 597–98; *see also Montefiore Med. Ctr.*, 642 F.3d at 332 (observing that claims regarding "the rate or execution of payment" do not "present a colorable claim pursuant to § 502(a)(1)(B)"). Still, some courts discuss rate-of-payment claims in the context of the second prong. *E.g.*, *Affiliated Dialysis of Joliet, LLC*, 2024 WL 1195607, at *3–4. Either way, Piedmont has failed to show that Regents's claims satisfy another requirement of the *Davila* test.

### III.    Conclusion

In sum, Piedmont has failed to show either that Regents could have brought a claim under ERISA or that Regents's claims for implied breach of contract and *quantum meruit* could have been brought as ERISA claims. As a result, ERISA does not completely preempt Regents's state-law claims. Without complete preemption, there is no basis for federal jurisdiction. Accordingly, Regents's motion to remand (Dkt. No. 15) is granted, and the case will be remanded to the Circuit Court of Cook County.

Dated:  September 16, 2024

                                                      Andrea R. Wood
                                                      United States District Judge